Price v. Bowen, No. 651-10-00 Rdcv (Teachout, J., Nov. 24, 2010)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 651-10-00 Rdcv** |

**MEGAN D. PRICE,**
  **Plaintiff**

  **v.**

**GARRY C. BOWEN,**
  **Defendant**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This matter came before the court as a result of the Vermont Supreme Court Entry Order dated January 30, 2008 remanding the case to the trial court for evidentiary hearings on two issues.  An evidentiary hearing was held on October 26, 2010 on whether Mr. Bowen had delegated to his attorney(s) the authority to settle the case on April 9, 2003 on the terms they represented on the record on that day.  This was essentially an evidentiary hearing on Defendant's Motion to Rescind Agreement.

Plaintiff Megan D. Price was present and represented herself.  Defendant Garry C. Bowen was present and represented by Attorney Lamar Enzor.  Attorney John D. Monahan was present representing Ryan, Smith & Carbine, Defendant in the related case of Bowen v Ryan, Smith & Carbine Ltd. (#197-4-06 Rdcv).  Pursuant to a pretrial order, RS&C was permitted to participate.  Based on the credible evidence, the Court makes the following findings of fact, conclusions of law, and order.

#### Findings of Fact

1.  Plaintiff Price owns real property in Castleton, Vermont.  Defendant Bowen purchased adjoining property.

2.  Defendant Bowen operates an excavating business.  He has the equivalent of a two-year associate degree in civil engineering.

3.  In October, 2000, Plaintiff Price filed this case against Defendant Bowen for damages and injunctive relief.  She claimed trespass, nuisance, and wrongful use of a right-of-way.  She complained of diversion of water courses, damage to culverts, and disturbance in her use and enjoyment of her property.  She also claimed violation of deed covenants, and construction of fences and digging of ditches on her land.  She alleged that Defendant

Bowen exceeded the proper use of the right of way by burying electrical and phone cables in the right-of-way without authority. She sought monetary damages and injunctive relief in the form of removal of the buried cables and restoration of her property.

4. Defendant Bowen's general liability insurance carrier, Concord Insurance Company, had previously engaged Ryan, Smith & Carbine to defend Mr. Bowen in a different case in environmental court brought by Ms. Price which predated this one.

5. When this civil action was filed, Concord continued its engagement of RS&C to defend Mr. Bowen. John Serafino, Esq. originally worked on the case, and Glenn Morgan, Esq. became involved when a trial attorney was needed. The court finds credible the testimony that Attorney Serafino informed Mr. Bowen that RS&C would defend claims for monetary damages, for which Concord would pay, and that it would provide an attorney to defend against claims for injunctive relief, but Concord would not be responsible for any expenses incurred with relation to any equitable relief that might be ordered. Mr. Serafino informed Mr. Bowen of this initially and again at the mediation that took place in 2002 with mediator Arthur O'Dea, which was not successful.

6. The case was scheduled for a jury trial on April 9, 2003. As the trial drew near, Attorneys Serafino and Morgan became more convinced that Plaintiff Price's allegations regarding violations of her property interests had merit and that Defendant Bowen's positions did not.

7. In final preparation for the jury trial, Attorneys Morgan and Serafino met with Mr. Bowen at his property on April 7, 2003. They spent 1½-2 hours with him, and told him that his case was not good. Specifically, they told Mr. Bowen that his personal interpretation of deed provisions about the scope of property rights was incorrect, and would not be accepted by the court. They specifically informed him that he would not succeed in keeping utility lines buried under the right-of-way where he had placed them. They told him they expected an adverse jury verdict if they went to trial.

8. They discussed with him that they intended to settle the claim for monetary damages, and they suggested that it may be advantageous to settle the claim for equitable remedies in a manner other than going to trial. Mr. Morgan suggested that a possibility was a settlement agreement to stipulate to the appointment of a special master to resolve the equitable claims, to put off for another day the resolution of those issues, and give Mr. Bowen a chance to make his best case to a master in an out-of-court setting.

9. Mr. Bowen was interested in the concept of submitting the equitable claims to a special master. Mr. Bowen suggested the local road commissioner as a candidate for the role of special master. Once Mr. Bowen was willing to resolve the equitable claims this way, they parted with the plan that the attorneys would begin discussions with Ms. Price's lawyer about the use of a special master. Mr. Morgan followed up by suggesting it the next day, which was the day before the jury draw, to Attorney John Canney, who represented Ms. Price.

10.  On April 9, 2003, the day for selecting the jury, Mr. Bowen met first with his attorneys at the RS&C office in Rutland before going to the courthouse.  The lawyers told Mr. Bowen that Concord wanted to settle the monetary claim.  Mr. Bowen was still angry with Ms. Bowen and reluctant to have to give in to any of her claims, and he had difficulty in understanding that he did not hold the property rights he thought he did.  However, he did not want the monetary claim to be settled by Concord unless the whole case was settled.  They discussed again the settlement of the equitable claims in the form of agreement to submit those issues to determination by a special master.  Mr. Bowen wanted to settle the case on those terms.  He understood that the equitable claims involved more than simply regrading the road.  He also understood that the special master would make all decisions about what needed to be done.

11.  Once they got to the courthouse, Mr. Bowen and Mr. Serafino occupied one of the party/witness rooms outside the courtroom.  Ms. Price and her attorney were in another such room.  Attorney Morgan made at least five trips back and forth over a two hour period conveying messages and offers and counteroffers, working to settle both the monetary claim and the equitable claims.  The amount of settlement as to monetary claims was not discussed with Mr. Bowen, as Concord had exclusive authority to make that determination.  With respect to equitable claims, the RS&C attorneys represented Mr. Bowen in an attempt to reach settlement.  Attorney Serafino stayed with Mr. Bowen in the party/witness room, and he was available to help  Mr. Bowen with the proposals as they were communicated and explained by Attorney Morgan, who went back and forth from room to room.  Mr. Bowen was reluctant to have to agree to anything, but he understood the proposals and understood that the alternative was the likelihood of a jury verdict against him and a judgment lien against his property.

12.  Mr. Bowen understood that a special master might require him to do some work on Ms. Price's property, such as restoration of the right-of-way to its prior condition.  He wanted to be able to minimize the expense of such work, and wanted to be able to be in a position to perform the work himself, in order to avoid out-of-pocket expense.  He now testifies that he was told that the most he would have to do was regrade the road to a reasonably passable condition, and that he verified that he would be able to do that, and that the only reason he agreed to a settlement is that his maximum exposure would be to regrade the right-of-way to a passable condition.  The court does not find his present testimony credible.  The court finds credible that he was informed, prior to giving his consent to a settlement, that the settlement would delegate to a master the authority to decide what work, if any, needed to be done, and the specifications, and if Mr. Bowen did not do it, the master could order that someone else perform the work.  The master would have full authority to make all decisions with respect to all equitable issues, including whether buried power lines would need to be moved, and whether culverts would be required to handle water flow, and where fences were in relation to boundaries, and whether or not fences had to be relocated.

13.  As the negotiations progressed, Ms. Price wanted security that the work would be performed, and requested a mortgage to secure the performance of any work that Mr.

Bowen might be required by the special master to complete on her property. Mr. Bowen did not want to place in her hands the power to decide whether the work was complete or not, because he believed that she would never be satisfied, and would never agree to discharge a mortgage on his land. Attorney Morgan proposed that the Plaintiff execute a discharge of the mortgage that the special master would hold in escrow, and it would be the special master who would decide whether or not all obligations were complete and thereupon deliver the mortgage discharge to Mr. Bowen. This was agreed to by Mr. Bowen. Attorney Serafino was surprised when Mr. Bowen agreed to it.

14. Concord and Ms. Price agreed to settle the monetary claim for $50,000.00. Mr. Bowen knew the monetary claim was settled, but did not know the amount. Terms of settlement on the equitable claims were agreed upon by both parties through their attorneys during the shuttling back and forth of communications from one room to the other. Attorney Morgan specifically communicated all terms to Mr. Bowen, who gave his express approval. He specifically understood that underground utility lines might have to be moved if the special master required it. He also specifically understood that the master would decide what work needed to be done, and if Mr. Bowen did not do it himself or get it done, the master could determine that it be done by someone else.

15. As soon as the agreement was reached, the attorneys went to place the terms of the agreement on the record before Judge Norton. This occurred in chambers. Mr. Bowen was specifically invited to attend the session with Judge Norton, but he declined to do so, choosing instead to remain in the witness room where he had been throughout the negotiations.

16. The terms of settlement were placed on the record by the attorneys before Judge Norton. There is a transcript of the hearing with Judge Norton which reflects the terms of the settlement agreed to between the parties.

17. The terms described to Judge Norton included the fact that a written notice of dismissal would be filed, presumably on the monetary claim, and a written settlement agreement would be filed setting forth the terms of settlement of the equitable claims. On June 27, 2003, Attorney Serafino drafted a form of agreement and sent it to Attorney Canney. Attorney Serafino relied on his memory which was inaccurate after the passage of several weeks, and the document did not fully and accurately reflect the terms agreed upon.

18. Attorney Canney sent back a different version. Attorney Serafino ordered a transcript of the hearing before Judge Norton, and used it to prepare a new version, which he sent first to Attorney Lamar Enzor, who by this time also represented Mr. Bowen.

19. Mr. Bowen had found out that Ms. Price had received $50,000 from Concord, and he did not want to have to do more for her. He turned to Attorney Enzor rather than Attorney Serafino and did not return Attorney Serafino's calls. Mr. Bowen did not sign the draft prepared by Mr. Serafino.

4

20. On September 23, 2003, Ms. Price filed a Motion to Enforce Settlement. While it was pending, in the spring of 2004, Attorney Serafino filed a Motion to Withdraw, which was granted. In June of 2004, Mr. Bowen filed a Motion to Rescind Settlement Agreement on the grounds that he had not authorized his attorneys to agree to the settlement placed on the record.

21. On September 22, 2004, the trial court granted Ms. Price's Motion to Enforce and denied Mr. Bowen's Motion to Rescind. A master was appointed pursuant to the terms of the agreement, and submitted a Master's Report, which was accepted by the court by order of March 21, 2007. Mr. Bowen appealed that order to the Vermont Supreme Court, which remanded in an order dated January 30, 2008 for an evidentiary hearing on the issues of (1) whether Mr. Bowen authorized his attorneys to settle on the terms set forth on the record (Mr. Bowen's Motion to Rescind), and if so, (2) whether the version that Ms. Price seeks to enforce accurately reflects the oral agreement set forth on the record (Ms. Price's Motion to Enforce).

20. In the hearing that took place on October 26, 2010, only the first question was addressed.

21. The court finds that with the passage of time, Mr. Bowen's memory became more selective, and that by the time of the hearing he only remembered specific statements or fragments of conversations that benefitted him. He frequently answered questions at the hearing by stating that he did not remember, or that 'he would not have said that.' He states unequivocally that he only agreed to settle the case because under the settlement, he would be able to perform any needed roadwork himself, and it would only have involved regrading the road to a reasonably passable condition. While it is true that the phrase "reasonably passable" was used during settlement negotiations, it appears that the phrase is the only thing Mr. Bowen remembers about settlement negotiations, whereas the credible evidence is that there were many other matters and details discussed and agreed to by him. Mr. Bowen's memory was also selective about a number of other matters related to the property issues between himself and Ms. Price, such as whether he had ever received a letter from his surveyor, whether he had been advised by his surveyor that he had erected a fence in the right of way, and whether he had been advised by his surveyor to remove the fence.

22. The credible evidence supports the finding that Mr. Bowen was specifically informed of all of the terms that were placed on the record before Judge Norton, and that after lengthy negotiations and after having discussed the terms with his two attorneys in private, Mr. Bowen specifically agreed to them and authorized his two attorneys to settle the case on those terms and to place the terms on the record with Judge Norton.

## Conclusions of Law

Based on the foregoing findings, the court concludes that there is not an evidentiary basis for Mr. Bowen's claim that his attorneys were not authorized to settle the case on his behalf on the terms stated on the record. Accordingly, Mr. Bowen has not shown facts to support his Motion to Rescind.

In Ms. Price's Supplemental Proposed Findings of Fact, filed after the hearing, Ms. Price included a request that the court find Mr. Bowen "guilty" of perjury, and award her punitive damages. It is not the function of this court to adjudicate criminal guilt, and therefore this request is denied. As to her request for punitive damages, such a request is a new cause of action and claim for relief, which would require reopening the case and expanding its scope. This is beyond the scope of the evidentiary hearing called for by the Vermont Supreme Court on remand. This court will not consider a new cause of action and claim for damages at this time.

There remains the necessity of an evidentiary hearing on the second issue identified by the Vermont Supreme Court: whether the terms Ms. Price wishes to enforce are the same as those placed on the record on April 9, 2003. A further hearing is needed.

## Order

1. The Motion to Rescind is *denied.*
2. The Motion to Enforce will be scheduled for a hearing. If either party believes that more than one hour is needed, he or she shall contact the Clerk's office.

Dated at Rutland this 23rd day of November, 2010.

_____
Hon. Mary Miles Teachout
Superior Judge